IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**EMMA LEE CARNEGIE**                                                      **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 3:20CV134 HTW-LGI**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Emma Carnegie appeals the final decision denying her application for a period of

disability and disability insurance benefits ("DIB"). The Commissioner requests an order

pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law

Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in

evidence, and all the applicable law, the undersigned recommends that this matter be

affirmed.

On March 6, 2018, Plaintiff filed an application for benefits alleging a disability

onset date of January 29, 2018, due to broken vertebrae in her neck, broken ribs,

unspecified surgery, high blood pressure, and dizzy spells. She was 49 years old on her

onset date, with a high school education and past work experience at the medium

exertional level in a variety of fields.[1] Following agency denials of her application based

on duration, the ALJ rendered an unfavorable decision finding that Plaintiff had not

---

[1]      Plaintiff has worked as a mixer, material handler, general-form worker, home attendant, stock
clerk, crop forming supervisor, and industrial cleaner.

established a disability within the meaning of the Social Security Act. The Appeals

Council subsequently considered new evidence submitted by Plaintiff, but found it

presented no basis for changing the ALJ's decision. Plaintiff now appeals that decision.

The evidence is detailed in the memorandum briefs and the ALJ's decision, and

thus, will not be repeated in depth here. Plaintiff was injured in a motor vehicle accident

in January 2018. After being advised by her treating physician that her neck pain would

worsen without surgical intervention, she underwent surgery in April 2018, and it

improved her condition. When asked what primarily prevents her from working at the

administrative hearing, Plaintiff testified that she experiences neck pain when she turns

her neck or walks for more than five minutes. The pain is reportedly so severe that she

must sit down. Plaintiff testified that she could lift and carry up to 10 pounds and has no

problems sitting for approximately 5 minutes so long as she is comfortable. She has pain

on her right side when bending at the waist, but no problems squatting. She also has

anxiety and trouble balancing when she gets dizzy sometimes.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had

not engaged in substantial gainful activity since her alleged onset date.[3] At steps two and

three, the ALJ found that Plaintiff's anxiety was not a severe medically determinable

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

[3] Though records show Plaintiff worked after her alleged onset date, the ALJ found her work activity did not rise to the level of substantial gainful activity.

impairment; and, although her history of cervical spinal fusion, spondylosis of the

thoracic spine, and obesity were severe, they did not meet or medically equal any listing.

At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to

perform a reduced range of light work with the following limitations:

> The claimant can occasionally climb, balance, stoop, crouch, crawl and
> kneel. She can frequently reach, handle, feel, push and pull. The claimant
> must avoid extremes of temperature and humidity, work at unprotected
> height, work in close proximity to exposed moving mechanical parts, and
> avoid concentrated exposure to chemical fumes and vibrating equipment.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age,

education, work experience, and residual functional capacity, she can perform work as a

furniture rental consultant, information clerk, and checker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1)

whether there is substantial evidence in the record to support the ALJ's decision; and (2)

whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19

F.4th 715, 718 (5th Cir. 2021). Substantial evidence "means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)

(internal quotation marks and citation omitted). It must be more than a scintilla, but it

need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh

the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it

finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36

F.3d 431, 434 (5th Cir. 1994). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek*, 139 S. Ct. at 1154 (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

## Discussion

Plaintiff assigns several errors on appeal: (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence; (2) the ALJ erred in failing to order a consultative examination; (3) the ALJ's residual functional capacity assessment fails to incorporate limitations resulting from her migraine headaches; (4) the ALJ erred in failing to expressly consider the non-examining agency's opinion; and, (5) the Appeals Council erred in failing to consider new evidence. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards.

As a threshold matter, most of Plaintiff's arguments rest on her assertion that the ALJ denied her disability claim based on duration. He did not. Plaintiff's claims were denied initially and upon reconsideration on that basis at the administrative level, but the ALJ was not bound by the agency's preliminary findings. The ALJ considered the record *de novo* and proceeded through the steps of the sequential evaluation before ultimately

4

denying Plaintiff's claim at step five.  At issue is whether the ALJ's denial was based on substantial evidence or warrants reversal and remand.

## 1.

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments.  20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  It is not a medical opinion, but an administrative finding of fact.  Social Security Ruling 96–8p, *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4).  The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

As her first assignment of error, Plaintiff contends that substantial evidence does not support the ALJ's residual functional capacity determination that she can perform light work, specifically the lifting/carrying demands of light work which entails lifting up to 20 pounds at a time or frequently lifting/carrying up to 10 pounds.  Given her age and vocational profile, Plaintiff argues that the medical vocational guidelines[4] would have

---

4    The Grids permit the ALJ to take administrative notice of the existence of jobs in the national economy in light of a claimant's residual functional capacity in combination with his or her age, education, and work skills.  Where the ALJ's findings regarding a particular claimant coincide with all the criteria of a particular Grid Rule, that Rule will direct a conclusion as to whether the claimant is or is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).

directed a finding of disability had the ALJ restricted her to sedentary work.[5]  In support,

she points primarily to the medical evidence generated in the months immediately

following her accident and surgery.  But as noted by the ALJ, the longitudinal evidence,

including that of her primary physician, Dr. Ward, indicated that Plaintiff's condition had

improved post-surgery.  In evaluating the medical evidence, the ALJ explained:

> At her May 2018 follow-up appointment, just four months following her
> accident, the claimant reported she was doing very well, as her neck pain
> was completely resolved. She denied radicular arm or leg symptoms, or
> difficulty with balancing or coordination. The postoperative changes were
> posterior stabilization of the cervical spine from C2-C7. Dr. Ward noted the
> claimant's wound was healing well, but he restricted her at that time from
> bending, twisting her neck, lifting more than ten pounds, overhead activity
> or floor level lifting. He also instructed the claimant to continue to wear the
> cervical collar full time. While the claimant was given these restrictions, the
> most reasonable inference from the context of these opinions is that they
> are impliedly temporary restrictions not intended to limit the claimant for
> more than a short period of time.  This is supported by the fact that the
> opinions appear during a period of exacerbation and immediately following
> corrective surgery. As temporary restrictions, the opinions do not render
> complete statements as to the claimant's condition throughout the relevant
> period of alleged disability. Accordingly, I do not find these statements
> persuasive.

---

[5]    The regulations provide that medium work "involves lifting no more than 50 pounds at a time
with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium
work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567.  By
comparison, light work involves "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job
is in this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls."  *Id.*  Sedentary work involves
lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out job duties. Jobs are
sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*

Plaintiff charges that the ALJ's temporal analysis is flawed because it does not comport

with the treatment notes and subsequent medical source statement of Dr. Marion Ward.

However, the undersigned does not so read the ALJ's decision.

Dr. Ward, who saw Plaintiff every 3 months, issued a medical source statement in

December 2018 indicating that Plaintiff could lift/carry up to 20 pounds, which is not

only more weight than he indicated in May 2018, but is within the lifting/carrying

parameters of light work.  Notwithstanding, he also notes than Plaintiff can occasionally

lift/carry no more than 5 pounds for no longer than 15 minutes; can stand and walk up to

20 minutes, and can sit for no longer than 10 minutes—all of which is inconsistent with

his treatment notes up to and including August 2018, as noted by the ALJ.  Dr. Ward also

opined that Plaintiff could not perform postural activities and had a restricted ability to

perform environmental and manipulative activities before ultimately concluding that

Plaintiff could not return to work.  The ALJ adopted some, but not all of these

assessments in formulating Plaintiff's residual functional capacity.  This was not error.

The Social Security Administration revised its regulations in 2017 so that ALJs are

no longer required to "defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including

those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2017).  Under

the new regulations, supportability and consistency of medical opinions or prior

administrative findings are "the most important factors" to be considered when

evaluating the persuasiveness of medical opinions.  But an ALJ is free, upon a showing

of good cause, to assign little or no weight to the opinion of any physician when the

physician's statements are brief and conclusory, are not supported by medically

acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the

evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations

omitted).

Applying this new standard, the ALJ found that not all of the limitations assigned

by Dr. Ward were sufficiently persuasive to find Plaintiff incapable of working within the

limits of her residual functional capacity. The ALJ explained:

> In considering the persuasiveness of Dr. Ward's statement, I adopted his
> environmental restrictions, and the exertional limitation of lifting 20
> pounds. However, the remainder of Dr. Ward's opinion is inconsistent with
> his August 2018 treatment notes that indicate the claimant was able to
> engage in unlimited walking. Moreover, the doctor's statement indicating
> the claimant is permanently disabled or unable to work is not a medical
> opinion, but rather an administrative finding dispositive of a case. These
> issues are reserved to the Commissioner, and as such are not entitled to any
> special significant weight.[6]

It was not unreasonable for the ALJ to weigh Dr. Ward's examination notes and findings

against his medical source statement and the record as a whole. *Salmond v. Berryhill*,

892 F.3d 812 (5th Cir. 2018).  Records confirm that Plaintiff had fine motor control and

was ambulating without assistance eight months after surgery.  She had pain and

tenderness in her neck and thoracic region, which was being treated with physical therapy

---

[6]    A treating physician's statements that a claimant is "disabled" or "unable to work" are not
entitled to any deference. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  The ALJ is
"responsible for making the determination or decision about whether [a claimant meets] the statutory
definition of disability" and such a determination is solely within the discretion of the ALJ. 20 C.F.R.
§ 404.1527(d)(1); *Id.* (citations omitted) (explaining "determinations that [a claimant] is 'disabled' or
'unable to work'" are legal conclusions reserved to the Commissioner);

and a cervical collar as needed.  Her residual "flank pain with twisting" was thought to be related to "delayed healing of those fractures."  She also exhibited unlimited range of motion in her upper and lower extremities suggesting she had an ability to perform occasional postural activities. The fact that there may have been some contrary evidence in the record to support additional limitations "does not undermine the ALJ's determination." *Bayer*, 557 F. App'x at 287–288.  Indeed, although Dr. Ward indicated in his medical source statement that Plaintiff could not return to work, substantial evidence, including subsequent evidence from Dr. Ward, support the ALJ's conclusion that Plaintiff could not return to medium work, but could perform a reduced range of light work.

<strong>2.</strong>

As her second point of error, Plaintiff contends that the ALJ's failure to expressly consider the non-examining agency physician's opinion resulted in an erroneous residual functional capacity determination.  Records show that three months after Plaintiff's accident, non-examining agency physician, Dr. Carol Kossman, opined that Plaintiff's impairments would not be severe within a year of her onset date as she had yet to undergo the recommended surgery.  As Plaintiff notes, the ALJ did not discuss Dr. Kossman's opinion but noted generally that "all medical opinions and prior administrative medical findings of record" had been fully considered.  The Commissioner submits that under the new regulations, ALJs are no longer "required to articulate how he considered each opinion or prior administrative medical finding from one medical source individually," but it is not clear that the "failure to address or—even mention" it is now

sufficient. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).  The regulations

explain:

> Because many claims have voluminous case records containing many types
> of evidence from different sources, it is not administratively feasible for us
> to articulate in each determination or decision how we considered all of the
> factors for all of the medical opinions and prior administrative medical
> findings in your case record. Instead, when a medical source provides
> multiple medical opinion(s) or prior administrative medical finding(s), we
> will articulate how we considered the medical opinions or prior
> administrative medical findings from that medical source together in a
> single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of
> this section, as appropriate. We are not required to articulate how we
> considered each medical opinion or prior administrative medical finding
> from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Even if the Court were to find the ALJ erred as Plaintiff argues, Plaintiff cannot

show that she was prejudiced.  "To establish prejudice, a claimant must show that [s]he

could and would have adduced evidence that might have altered the result." *Hardine v.

Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022).  *Brock v.

Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted).  In support of her claim,

Plaintiff relies on the Fifth Circuit's decision in *Kneeland v. Berryhill*, where the court

concluded that the ALJ erred in rejecting an *examining* physician's opinion that

conflicted with the ALJ's residual functional capacity assessment without explanation.

850 F.3d at 759–60.

Here, Dr. Kossman is not only a non-examining physician but her opinion is

*adverse* to Plaintiff's disability claim.  Indeed, contrary to Plaintiff's characterizations on

appeal, Dr. Kossman did not opine that Plaintiff's impairments were disabling as that

term is defined under the Act.  She simply noted that their severity would not last the

requisite 12-month duration because Plaintiff had yet to undergo the recommended

surgery. [7]  While the ALJ did not discuss Dr. Kossman's conclusions, it is unlikely that

her adverse opinion would have altered the result.  It is clear the ALJ considered the

totality of the evidence, including the evidence generated after Dr. Kossman's opinion, in

arriving at his residual functional capacity determination. *McCray v. Kijakazi*, No. 21-

60401, 2022 WL 301544, at *2 (5th Cir. Feb. 1, 2022) (report from a *non-examining* state

agency reviewing physician does not alone constitute substantial evidence).  Thus,

Plaintiff is unable to establish prejudice, as she must, to warrant reversal and remand on

this claim.  *Garcia v. Berryhill*, 880 F.3d 700, 704–05 (5th Cir. 2018).

### 3.

As her next assignment of error, Plaintiff argues the ALJ's residual functional

capacity is erroneous because he failed to incorporate limitations caused by her migraine

headaches.  Plaintiff claims that nausea and dizziness brought on by her migraines would

affect her ability to maintain attention and concentration causing her to be off task and

frequently absent from work.

An ALJ has a duty to investigate the record, but that duty "does not extend to

possible disabilities that are not alleged by the claimant or to those disabilities that are not

---

[7] Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months." 42 U.S.C. § 423(d)(1)(A).  In considering "duration," it is the inability to engage in substantial gainful activity because of the impairment that must last the required 12–month period, not just the impairment upon which it is based. *See Barnhart v. Walton*, 535 U.S. 212, 217–22, 122 S. Ct. 1265, 1264, 152 L. Ed. 2d 330, 300 (2002).

clearly indicated on the record." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016)

(quoting *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)).  Notably, Plaintiff did not

allege migraine headaches on her disability application, nor did she mention them at the

administrative hearing.[8]  Her counsel, moreover, did not pose a hypothetical including

headache limitations to the vocational expert at the administrative hearing, nor did Dr.

Ward assign any limitations in his medical source statement.  Accordingly, the

undersigned submits that Plaintiff "cannot say that she put the issue before the ALJ or

that the ALJ improperly disregarded it."  *Gore v. Barnhart*, 54 F. App'x 406, 406 (5th

Cir. 2002).  Moreover, an ALJ's residual functional capacity assessment and

corresponding hypothetical need only incorporate the limitations recognized by the ALJ.

*Bowling*, 36 F.3d at 436.  There is no requirement to present limitations not borne out by

the record.  While Plaintiff cites to headache complaints in the months immediately

following her accident and isolated complaints of dizziness elsewhere in the record, she

does not point to substantial evidence establishing either their severity or resulting

limitations in the record as a whole.

**4.**

 Plaintiff also contends that the ALJ erred in failing to fully develop the record by

ordering a consultative examination. Plaintiff suggests that a consultative examination

was warranted because Dr. Ward and Dr. Kossman both opined that she was disabled,

and because there is "no evidence by an examining or non-examining physician that

---

[8]      Though Plaintiff alleged "dizzy spells" and high blood pressure on her application, she does
not challenge the ALJ's failure to find either impairment severe at step two.

supports the residual functional capacity" assessed by the ALJ.  These arguments are unavailing.

An ALJ's duty to obtain a consultative examination is triggered when the evidence is insufficient to make an informed decision, not a favorable one.  *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)*; Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  If the ALJ has sufficient facts before him to make a determination, he has no obligation to order additional consultative examinations. *Id.*  Contrary to the cases cited by Plaintiff on appeal, Plaintiff has not shown that the need for a consultative examination was apparent here.  She did not request a consultative examination, nor did she experience a worsening of her condition that would preclude light work within the limits of her residual functional capacity.

Moreover, the failure to order a consultative examination is not reversible error unless the claimant is prejudiced.  *Webster*, 19 F.4th 715.  "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Hardine*, 2022 WL 2070399, at *2.  No such showing has been made here.  The ALJ considered the testimonial and medical evidence before him, including Dr. Ward's medical source statement. The ALJ discounted the limitations assigned therein, not because they were vague or incomplete, but because they were inconsistent

with the treatment records and the longitudinal evidence as whole. *See Hardine*, 2022 WL 2070399, at *2.

**5.**

As her final point of error, Plaintiff alleges that the Appeals Council erred in failing to remand her claim to the ALJ after she submitted new evidence for consideration.  When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020); *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). The Appeals Council considers additional evidence only if it is new, material, and relates to the period on or before the ALJ's decision.  20 C.F.R. § 404.970(b), 404.976 (B). "Evidence that was 'not in existence at the time of the administrative . . .  proceedings meets the 'new' requirement for remand to the Secretary.'"  *Hunter v. Astrue*, 283 F. App'x 261, 262 (5th Cir. 2008).  To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition."  *Haywood v. Sullivan*, 888 F.2d 1463, 1471–72 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).  However, "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports

the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016)

(citing *Sun v. Colvin*, 793, F.3d 502, 511-12 (5th Cir. 2015)).  There must be a reasonable

possibility that the evidence would have changed the outcome of the Commissioner's

determination.  *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

After the ALJ's decision issued in February 2019, Plaintiff submitted duplicate

treatment records which were discounted by the Appeals Council because they did not

meet the new and material evidence standard. However, the Appeals Council did review

the following new evidence from Dr. Ward:  (1) treatment records dated December 4,

2018, and (2) correspondence dated March 4, 2019, advising that Plaintiff could not

return to work due to her cervical injury, specifically due to her inability to lift over 5lbs

or twist her neck left or right.  Upon reviewing the newly submitted evidence, the

Appeals Council concluded that there was no reasonable probability that it would have

changed the outcome of the ALJ's decision. The undersigned submits that substantial

evidence supports this finding.

For instance, in the treatment records from December 2018, Dr. Ward notes that

Plaintiff had no difficulty with fine motor control; maintained the ability to ambulate

without an assistive device; could walk for an unlimited distance; and maintained full

motor strength in all areas. He noted that she is unable to turn her neck secondary to

cervical fusion but noted that her delayed healing was improving and recommended that

she continue with physical therapy and use a heating pad.  As for limitations, Dr. Ward

noted that Plaintiff needed to avoid lifting more than 20 pounds, floor level lifting, and

overhead activity. Most notably, consistent with the ALJ's finding, he also opined that Plaintiff could not return to her previous work but could perform light duty work.

As for the letter he submitted in March 2019, the opinions expressed therein appear to reflect Plaintiff's condition as of March 2019, and not the period under consideration before the ALJ. Plaintiff's lifting activity, for example, was reduced to 5 pounds, noticeably less than the 20 pounds indicated by Dr. Ward in December 2018. To change the outcome of the ALJ's decision, newly submitted evidence must "relate to the time period for which benefits were denied," not the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471–72 (5th Cir. 1989).

In sum, based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The Court's review of the record compels a finding that that substantial evidence supports the ALJ's decision.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on June 29, 2022.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE